In re Harleigh S. PEACOCK,
III, Debtor.

SEA WEST FEDERAL CREDIT UNION
f/d/b/a Alameda Coast Guard
Federal Credit Union, Plaintiff,

v.

Harleigh S. PEACOCK, III, Defendant.

Bankruptcy No. 85–00300–BKC–AJC.
Adv. No. 85–1025–BKC–AJC–A.

United States Bankruptcy Court,
S.D. Florida.

Feb. 19, 1986.

to deny the discharge of debtor Harleigh S. Peacock, III, pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(2)(C).

██ Counsel for the debtor announced at pre-trial conference that Harleigh S. Peacock, III had been diagnosed as a victim of pre-AIDS syndrome and inquired of the court as to whether or not the court would require any special precautions to be taken during the trial when the AIDS victim was present in the courtroom. (Some judges in Broward County, Florida, had previously required AIDS victims to wear face masks during courtroom proceedings.) The court made inquiries in an effort to determine whether or not it was appropriate to conduct this trial in any special manner to protect the litigants, witnesses and court personnel from possible infection from the debtor. The court was advised by the Center for Disease Control that no special precautions are recommended for courtroom proceedings where one or more of the participants has AIDS. The court would not have mentioned this matter out of respect for the privacy of the debtor, but for the fact that the debtor, himself, elected to make public in open court the fact that he was afflicted with AIDS. Since the debtor waived his privacy on this subject matter, the court believes it might be instructive to attach to these findings of fact and conclusions of law a copy of the letter from the Center for Disease Control in Atlanta, Georgia, indicating their present position regarding court procedures involving persons afflicted with AIDS. A copy of that letter is therefore attached hereto.

The debtor had been represented by Spann, Jerome & Associates, P.A. through the time of pre-trial conference. Trial was specially set in this matter to accommodate counsel for the plaintiff, a California attorney, who was scheduled to fly to the Southern District of Florida for this trial. On January 31, 1986, a motion to withdraw as counsel for debtor was filed by Spann, Jerome & Associates, P.A. and Ronald Thomas Spann, individually. A hearing was held by conference telephone call on February 4, 1986 wherein the court was advised that

Ira M. Kleinman, Sweet & Kleinman, Lafayette, Cal., for plaintiff.

James B. McCracken, Fort Lauderdale, Fla., Trustee.

Reggie D. Sanger, Fort Lauderdale, Fla., for Trustee.

Harleigh S. Peacock, III, pro se.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

This cause came on for trial on February 10, 1986 upon the complaint of Sea West Federal Credit Union, f/d/b/a Alameda Coast Guard Federal Credit Union, seeking

Ronald Thomas Spann wished to withdraw from this case and that Stephen D. Jerome, counsel for debtor, remaining of record, was hospitalized. The court entered an order on February 4, 1986 authorizing the withdrawal of Spann, Jerome & Associates, P.A. and Ronald Thomas Spann, individually. The court directed Stephen D. Jerome continue to serve as counsel of record. During the conference telephone hearing, the court advised Mr. Spann to coordinate with Mr. Jerome regarding the trial date and indicated that if a further continuance of the matter was required because of Mr. Jerome's hospitalization, such continuance could be granted by telephone but that if Mr. Kleinman flew to Florida for the trial, the matter would not be continued on the date of trial.

On February 10, 1986 when the case was called for trial, the debtor, Harleigh S. Peacock, III, appeared and advised the court that Mr. Jerome was in the hospital and orally moved for a continuance. The court attempted to locate Mr. Jerome by telephone and called Mr. Ronald Thomas Spann and also Mr. John Galiosi, to whom the court was referred by Mr. Spann. The court was advised that Mr. Jerome remained hospitalized. The court denied the oral motion for continuance and directed the trial to proceed.

For the plaintiff's case, the court heard the testimony of George Stratten, a representative of the plaintiff and the testimony of Harleigh S. Peacock, III as an adverse witness. Four documentary exhibits were admitted into evidence. At the conclusion of the plaintiff's case, the debtor took the stand again in his own defense and made a sworn statement.

The testimony was relatively undisputed and the court having heard the testimony of Mr. Peacock and observed his demeanor, the court is inclined to find Mr. Peacock credible and to believe his testimony.

The record established that on February 2, 1984, Mr. Peacock had made application to the Alameda Coast Guard Federal Credit Union for a Visa account. The account was approved on February 16, 1984 for a credit limit of $1,000 as disclosed by Plaintiff's Exhibit No. 1. It is undisputed that Mr. Peacock made timely payments on all charges on this account until he encountered financial troubles in 1985. On January 18, 1985, on the advice of an attorney, Ronald Thomas Spann, Mr. Peacock sought protection under the bankruptcy court by filing a petition under chapter 13 of the Bankruptcy Code. Mr. Peacock testified that Mr. Spann told him to continue using his credit cards thereafter until such time as the cards were taken away from him. Mr. Peacock did, in fact, continue to use the Visa credit card, issued by plaintiff, and charged such items as the purchase of medication, $12.50; gasoline, $11.50; food at Howard Johnsons, $6.65; various home-improvement supplies from Lindsley Lumber Company and other such supplies in varying amounts ranging from $4.19 to $75.94. Mr. Peacock made approximately 170 different charges after the filing of the date of his chapter 13 petition. No notice of the filing of the chapter 13 petition was given to the Alameda Coast Guard Federal Credit Union, the issuer of his Visa card. Thereafter, on March 19, 1985, debtor filed a motion to convert from chapter 13 to chapter 7. On April 19, 1985, an order converting was entered. Mr. Peacock, according to his testimony, converted his chapter 13 proceeding to a chapter 7 proceeding on instruction of Mr. Spann. At this point in time, the credit card sponsor became aware of bankruptcy proceedings.

Mr. Peacock testified that it was always his intention to repay the charges on these accounts and that he planned to make the repayment as part of a chapter 13 plan which he had been told could be stretched out from three to five years in repayment. His testimony and his prior deposition established that he earned a little over $200 a week. He owned a home jointly with another person. The monthly mortgage payments on this home were over $500 per month but his friend shared the mortgage payment making his obligation a little over $250 per month. He conceded that after paying for his transportation to work and

other expenses that he had very little money left over and conceded that after meeting his other obligations he had available for the purchase of food only approximately $20 per week.

The plaintiff presented no evidence to establish that the purchases by Mr. Peacock were luxury items. Accordingly, the plaintiff's claim under 11 U.S.C. § 523(a)(2)(C) and the presumption created thereunder must fail.

■ Although the court believes the testimony of Mr. Peacock, that he acted on advice of counsel and that he intended to make repayment of these charged items over a three to five year period, under a chapter 13 plan, the court does not believe that this intent is sufficient to defeat the claim of non-dischargeability under § 523(a)(2)(A). The credit applied for as indicated by Plaintiff's Exhibit No. 1, was fully and clearly explained in plain English and offered "payment flexibility" which indicated an option to pay a minimum monthly amount or more each month. That was the agreement and obligation imposed upon the debtor when the debtor signed the application, agreement and disclosure for Visa line of credit account on February 2, 1984. His undisclosed unilateral intent to convert the payment provisions of this agreement to a three to five year payout under a chapter 13 plan, undisclosed to the lender and unapproved by the lender, clearly constitutes obtaining credit under false pretenses under 11 U.S.C. § 523(a)(2)(A).

The court is most compassionate and sympathetic to the debtor regarding the debtor's affliction with AIDS and for the apparent inadequate legal advice and representation which the debtor has received. Nevertheless, the court is satisfied that the debtor, in proper person, received a full and fair hearing on the merits of this cause and that the debtor having received the advance of credit from the plaintiff, under false pretenses, makes this debt a non-dischargeable obligation.

Accordingly, pursuant to B.R. 9021(a), a Final Judgment incorporating these Findings of Fact and Conclusions of Law is being entered this date.

## APPENDIX

January 6, 1986

Judge A. Jay Cristol
U.S. Bankruptcy Court
Chamber 1412
Federal Building
51 SW 1st Avenue
Miami, Florida 33130

Dear Judge Cristol:

Your request for information has been referred to me for reply.

The cause of the acquired immunodeficiency syndrome (AIDS) has been found to be a virus known as human T-lymphotropic virus, type III or lymphadenopathy associated virus (HTLV–III/LAV). HTLV–III/LAV can be transmitted through sexual contact or through blood products or blood. We have no evidence that it can be transmitted through air, food, water, inanimate objects, or casual contact.

We have not recommended special precautions for courtroom preceedings where one or more of the participants has AIDS. I know of no usual courtroom procedure that would result in transmission of HTLV–III/LAV.

I enclose a copy of the recommendations we have promulgated for prevention of HTLV–III/LAV transmission in the workplace.

I hope this information is helpful to you.

Sincerely yours,
/s/ D. Peter Drotman M.D.
D. Peter Drotman, M.D., M.P.H.
Medical Epidemiologist
AIDS Program
Center for Infectious Diseases

Enclosure (MMWR 11/15/85)